### THE MUNCASTER CASTLE.*

### BROWN v. LANCASHIRE SHIPPING CO. et al.

(District Court, E. D. New York. July 8, 1922.)

Shipping ☞84(3)—Injury to stevedore; unsafe place to work.

Where the captain of a loading steamship caused a guy rope from the cargo boom, in use by stevedores, to be moved and fastened in another place, where, when slack, it lay on the deck alongside a hatch coaming, but rose suddenly when drawn taut, and a stevedore, when stepping over the coaming to descend the ladder was caught and thrown down the hatchway and injured, without negligence on his part, the ship was liable for his injury, for making unsafe his place of work.

In Admiralty. Suit by Harry F. Brown against the steamship Muncaster Castle and the Lancashire Shipping Company, with the Atlantic Stevedoring Company impleaded. Decree for libelant against the ship.

Austin & Abruzzo and M. T. Abruzzo, all of Brooklyn, N. Y., for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating and L. De Grove Potter, all of New York City, for the steamship.

A. G. Maul and Walter G. Evans, both of New York City, for Atlantic Stevedoring Co.

CHATFIELD, District Judge. The libelant was precipitated into the hold of the steamer Muncaster Castle, on the 31st day of July, 1921, and sustained injuries, consisting of a broken thigh and fractures of the two bones of the arm close to the wrist and of two of the small

---

bones in the wrist. He has recovered, so as to be able to walk with a limp, due to the shortening of the right leg, and the fractures in the bones of the wrist have healed, leaving him with an impaired motion, which might be improved through an operation. He was laid up for six months. It appears that Brown was in the employ of the stevedores and in charge of a gang stowing cargo in the hold of this vessel. He had earned some $45 a week on an average. Just before the accident, he came on deck to make inquiries or get instructions from the superintendent of the stevedores, and as he stepped over the hatch coaming, in order to place his foot upon the ladder when going back into the hold, a guy rope from the cargo boom was drawn taut between his legs, lifting him from the coaming and precipitating him into the hatch.

The equipment for the cargo booms was furnished by the vessel and seems to have been sufficient for the purposes both in quantity and character. The stevedores were using a mast and boom upon the port side of the steamer, and the particular guy in question led across the steamer where it had been fastened near the starboard rail. During the course of the morning an officer of the steamer, identified by one of the witnesses as the captain, found that this guy interfered with passage along the deck, and had it moved by a sailor from the rail of the ship to a ring at the corner of the hatch coaming. This guy rope was then fastened up by the stevedores, so that when slack it would fall clear of the hatch coaming, by a line attached to the rail of the bridge. Just before Brown stepped over it, this line or stay to the bridge rail was released, and the guy then lay on the deck just forward of the hatch coaming or just inside the hatch.

There is no evidence to show where the line was when Brown came up from the hold, but when he started to go down the guy was evidently lying close to the hatch coaming and with no warning of its position, or that the slack upon the guy rope was to be taken up, Brown straddled the rope, as well as the hatch coaming, in stepping over to descend to the hold. The tightening of the rope thus lifted him from the hatch coaming, as has been described.

There is no evidence in the case to indicate that there was any negligence on the part of the libelant. The rope was visible, but not in such position as to attract attention. Furthermore, the libelant would have the right to anticipate that no rope would be left in such a position unless warning was given to any one who might be endangered by its suddenly being drawn taut. To hold that Brown was at fault for not anticipating that a line might be drawn up so as to throw him from the hatch coaming, or that he was careless in not seeing a rope lying loosely along the deck, would be to require of him more than reasonable care under the circumstances. The guy rope, when carried to the rail and fastened up by a stay to the bridge, was not a source of danger. The mere shifting of the rope from the rail to the corner of the hatchway was not of itself negligence. But to change the position of the guy rope, and then to leave it in such a position that it was likely either to catch upon the hatch coaming or to interfere with any one

who might not know it was there, was negligence, and was the cause of the accident.

The foreman stevedore may not have had time to change the rope, nor opportunity to warn Brown; but he should have realized the danger. Responsibility seems to rest both upon the stevedores and upon the ship. The officers of the ship and its servants, members of the crew, created the dangerous condition, which they also allowed to continue, and thus did not furnish and keep safe a place for the stevedores to do their work, using what would be reasonable care in such a situation. Under the circumstances, the ship and the stevedores were jointly liable for the accident; but, as the libelant cannot recover from the stevedores for the acts of his fellow servants, decree must be given against the vessel.

There is little dispute as to the extent of his injuries. Considerable time was lost, and his injuries are to a great extent permanent, but do not prevent him from obtaining some work in different lines.· He would have difficulty in performing the work of a stevedore, but ultimately, taking into account his age, appearance, and intelligence, he may progress more rapidly because of the enforced change.

An award of $4,000 is deemed adequate and will be allowed. The petition against the Atlantic Stevedoring Company will be dismissed.